338 S.E.2d 398

**Alfred James VINCENT, M.D.**

**v.**

**Stanley PREISER.**

**No. 16366.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1985.*

Rehearing Denied April 3, 1986.

---

\* Chief Justice Miller and Justice McGraw did not participate in the consideration or decision of

Keats, Krebs & Leckey, William F. Krebs, Alexandria, for appellant.

Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Michael J. Farrell, Huntington, Preiser & Wilson, Barbara H. Fleisher, Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon appeal from a final order[1] of the Circuit Court of Kanawha County, West Virginia [hereinafter, "the trial court"] imposing monetary sanctions of $7,400.00 for contempt of court resulting from failure to furnish matter pursuant to discovery orders. For the reasons stated herein, we affirm the finding of contempt but reverse

---

this case. Justice Caplan, retired, was recalled for this case.

1. As discussed later in this opinion, the contempt order in this case imposing monetary sanctions (prospective fines) is primarily criminal in nature. It was, therefore, an immediately appealable final order. *See Doctors Memorial* *Hospital, Inc. v. Woodruff,* 165 W.Va. 324, 267 S.E.2d 620 (1980) (criminal contempt; one of six appellants fined, five incarcerated). *Cf.* *State ex rel. Taylor v. Devore,* 134 W.Va. 151, 156, 58 S.E.2d 641, 644 (1950) (criminal contempt; appellant incarcerated and fined).

the imposition of the particular monetary sanctions and remand this case for further proceedings consistent herewith.

## I. *Facts*

The tortuous history of the discovery process in this case, including the course of

2. The merits of the underlying case, involving a controversy over a lawyer's fee arrangement with his client, is not before us on this appeal. At the time this appeal was presented, the underlying case had not yet been tried.

3. An outline of the relevant discovery process is as follows:

(1) *Appellee's first set of interrogatories and first request for production of documents:*
7/20/79 served.
No answers, responses or objections served within 30 days.
8/24/79 appellee's first motion to compel filed.
10/5/79 hearing on said motion; 10/26/79 deadline set (orally).
10/30/79 appellant's first Rule 26(c) motion filed for protective order limiting discovery "in regard to ... defendant's [appellee's] first set of interrogatories [and] defendant's first request for documents ... to matters involving the [lawyer's] fee arrangement between the plaintiff [the client] and defendant [lawyer]."
11/6/79 appellee's second motion to compel filed.
12/5/79 hearing on said motion; trial court again orders (orally) answers and responses.
12/5/79 appellant's second Rule 26(c) motion filed for protective order limiting discovery "in regard to defendant's first set of interrogatories [and] defendant's first request for documents" to only those matters relevant to "the fee arrangements between the plaintiff and defendant[.]"
12/28/79 appellee's first set of interrogatories answered.
1/8/80 trial court (Belcher, J.) enters written order taking appellant's Rule 26(c) motions under advisement.
8/30/80 appellee's third motion to compel production of documents (chronologs) filed.
9/12/80 hearing on such motion; 9/22/80 deadline set (orally).
1/8/81 trial court (Belcher, J.) enters written order that chronologs be produced (by 9/22/80) (upon the condition that special commissioner would rule on any allegedly irrelevant chronologs); defendant's (not plaintiff's) motion for protective order "remains pending and in the breast of the Court."
3/10/81 appellee's first motion for contempt and dismissal filed.
6/27/81 hearing on such motion.
7/20/81 trial court (Belcher, J.) enters written order that chronologs be produced as per 1/8/81 order (by 8/10/81).

conduct of the appellant as the alleged contemner, must be recited for clarification of the legal issues.[2] For the sake of comprehension an outline distills the voluminous record better than a narrative.[3]

The salient facts are that the appellant, Dr. Vincent, sought to limit discovery by

7/31/81 Belcher, J., retires; succeeded by Workman, J.
3/28/83 appellee's second motion for contempt and dismissal filed.
4/8/83 hearing on said motion.
8/23/83 trial court (Workman, J.) enters written order that sheriff obtain chronologs (which was done).

(2) *Appellee's second set of interrogatories:*
3/27/81 served.
No answers or objections served within 30 days.
7/12/83 appellee's motion to compel filed.
8/12/83 hearing on said motion; trial court enters written order compelling answers by 8/26/83.
9/83 appellee's motion for contempt and dismissal filed.
12/5/83 hearing on said motion; trial court orally orders answers by 12/12/83.
12/12/83 trial court enters written order to same effect.
12/12/83 "sham" answers served (used appellee's answers verbatim).

(3) *Appellee's third set of interrogatories and second request for production of documents:*
1/25/83 served.
No answers, responses or objections served within 30 days.
7/12/83 appellee's motion to compel filed.
8/12/83 hearing on said motion; trial court enters written order compelling answers and responses by 8/26/83.
8/12/83 answers to 4 of 9 interrogatories served; no responses to request for documents.
9/83 appellee's first motion for contempt and dismissal filed.
12/5/83 hearing on said motion; trial court orally orders remaining answers and all responses to be served by 12/12/83; trial court orally imposes $250.00 sanction for failure to obey 8/12/83 order, in order to "get [appellant's] attention"; trial court also orally warns that a further sanction of $100.00 per day would be imposed after 12/12/83 for noncompliance.
12/12/83 trial court enters written order to same effect; order recites that sanction of $100.00 per day would be payable to the appellee.
12/12/83 "answers" in form of virtually illegible, handwritten marginal notations and some but not all documents served.
2/8/84 appellee's second motion for contempt and dismissal filed.
2/24/84 hearing on said motion; trial court orally rules that the answers and responses were not sufficient and were not served in good

the appellee, Mr. Preiser (an attorney at law), to matters relevant to the lawyer's fee arrangement between the parties, which was the subject of the underlying lawsuit. Specifically, the appellant resisted production of his federal income tax returns and bank accounts for a certain period of time on the ground that his financial affairs were not relevant to the lawyer's fee arrangement in controversy. The appellee asserted, however, that the appellant's financial condition at the time in question was relevant to determine whether the appellant misrepresented his financial status to the appellee in order to induce the latter to accept a change in the fee arrangement from an hourly rate to a contingency fee. The appellee also asserted that the appellant's financial condition was relevant in order to determine whether the appellant incurred monetary damages as a result of the appellee's legal services, as alleged by the appellant.

In August, 1983 and again in December, 1983, the trial court ordered the appellant to answer the interrogatories and produce the documents in question. After a hearing in February, 1984, on the appellant's failure to comply fully with the discovery orders, the trial court found that the appellant had willfully and continually disobeyed such orders. Pursuant to its order of December 12, 1983, the trial court imposed monetary sanctions at $100.00 per day for

each of the 74 days in which the appellant was in contempt.

The appellant contends that a finding of contempt of court based upon noncompliance with discovery orders is improper as an abuse of discretion when the court has not yet expressly denied the alleged contemner's motions for a protective order limiting the scope of discovery to exclude matters which are involved in the discovery orders found to have been contumaciously ignored.[4]

In response, the appellee contends, *inter alia*, that the contempt sanctions here should be upheld because even if the trial court had invoked the harsher sanction of dismissing the appellant's action with prejudice, due to his continuing course of allegedly contumacious conduct, it would not have abused its discretion.

II. *The finding of contempt*

 The appellant admits that he disobeyed the trial court's discovery orders entered on August 12, 1983 and December 12, 1983, but argues that he did so with the good faith belief that he was entitled to do so as long as his motions for protective order limiting the scope of discovery were not expressly denied. The record contradicts this argument of good faith. The appellant's filing of two motions for a protective order limiting the scope of discovery to, in essence, relevant matters, pursuant to *W. Va. R. Civ. P.* 26(c)(4),[5] did not preclude

---

faith, and that the appellant had continued to disobey willfully the 8/12/83 and 12/12/83 orders; pursuant to 12/12/83 order, trial court orally imposes $7,400.00 sanction ($100.00 per day after 12/12/83) for contempt of the court's prior orders.

3/6/84 trial court enters written order to same effect; order recites that $7,400.00 sanction is to be paid to the Clerk of the Circuit Court of Kanawha County, West Virginia.

This appeal is from the order of 3/6/84. The $250.00 sanction imposed by the 12/12/83 order has not been challenged on this appeal.

4. In his petition for appeal filed with this Court the appellant assigns three errors which were not briefed: (1) the alleged lack of receipt of orders compelling discovery and imposing sanctions; (2) "invasion of privacy" due to disclosure of his financial and patient affairs; and (3) "cruel and unusual punishment" in light of his *pro se* status. The appellant is deemed to have waived these assignments of error not argued in

his briefs. *See State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765, 768, n. 1 (1983); syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981).

5. *W. Va. R. Civ. P.* 26(c), including 26(c)(4), provides in pertinent part:

Upon motion by a party ..., and for good cause shown, the court ... may make any order which justice requires to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; ...

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

the imposition of appropriate monetary sanctions under *W. Va. R. Civ. P.* 37(b)(2)(D) [6] for contempt of subsequent orders compelling discovery. There are several reasons for this conclusion. First, the two Rule 26(c)(4) motions in this case were, by their own terms, clearly limited to specific, then pending discovery requests, not to all future discovery requests.[7] Consequently, the appellant had no legitimate basis upon which to claim that his refusal to provide subsequently sought discovery, subsequently ordered to be provided, was done in good faith. Second, these two Rule 26(c)(4) motions [8] had been mooted, in part, by the appellant's furnishing some of the discovery covered by the motions for protective order, that is, by his answers on December 28, 1979, to the appellee's first set of interrogatories. Third, the Rule 26(c)(4) motions had been implicitly but necessarily denied, in part, by the trial court's orders entered on January 8, 1981 and July 20, 1981, compelling the appellant to furnish the remainder of the discovery covered by the motions for protective order, that is, the chronologs. The appellant argues that his motions for protective order limiting the scope of discovery remained in the breast of the court until expressly denied by the order entered on March 6, 1984. A

fourth reason why this argument lacks any factual basis is that the order entered on January 8, 1981, compelling production of the chronologs, expressly states that the defendant's (the appellee's) motions for a protective order remained in the breast of the court. That order did not state that the plaintiff's (the appellant's) motions for protective order remained in the breast of the court. In fact, Judge Workman informed the appellant during various hearings that she considered the matter as having been decided by Judge Belcher's orders compelling discovery entered in January and July of 1981, and that she would not "go behind" those orders.

A movant for a protective order under *W. Va. R. Civ. P.* 26(c)(4) may be held in contempt of court, under *W. Va. R. Civ. P.* 37(b)(2)(D), for failure to comply with court orders compelling discovery, where a fair reading of the orders compelling discovery as well as the circumstances, including repeated oral rulings of the court, indicate that the Rule 26(c)(4) motion(s) have been denied. The Rule 26(c)(4) movant in such a case, by filing such motion(s), does not, in effect, grant himself a protective order until the court formally denies the motion(s) for protective order. *Cf. Chubb Integrated Systems v. National Bank,* 103 F.R.D.

---

**6.** *W. Va. R. Civ. P.* 37(a) sets forth the procedure for obtaining an order compelling discovery. *W. Va. R. Civ. P.* 37(b) provides sanctions for failure to comply with an order compelling discovery, including, in *W. Va. R. Civ. P.* 37(b)(2)(D), the entry of "an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination[.]" The final paragraph of *W. Va. R. Civ. P.* 37(b) provides as follows:

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Thus, the award of reasonable expenses, including attorney fees, is mandatory in every case imposing sanctions for failure to comply with an order to provide or permit discovery (unless the court finds that an award of expenses would be unjust). If these reasonable expenses are not timely paid, the court may take appropriate measures to secure compliance, including in-

voking any of the sanctions set forth in *W. Va. R. Civ. P.* 37(b)(2)(A)–(C).

**7.** The two Rule 26(c)(4) motions were not a proper mechanism to challenge even the pending discovery requests because they were not timely presented. These motions should have been presented within 30 days after the discovery requests or, at the very latest, prior to the deadline (October 26, 1979) set by the trial court for furnishing of the discovery. "A party may not remain completely silent even when he regards ... a set of interrogatories or requests to inspect as improper. If he desires ... not to respond he must seek a protective order, ..." 8 C. Wright and A. Miller, *Federal Practice And Procedure: Civil* § 2035 at 263 (1970). "Ordinarily the [protective] order must be [sought and] obtained before the date set for the discovery, and failure to move at that time will be held to preclude objection later, ..." *Id.* at 262 (footnotes omitted).

**8.** See n. 3, *supra,* for the wording of these two Rule 26(c)(4) motions (filed on 10/30/79 and 12/5/79).

52, 61–62 (D.D.C.1984) (the filing of a motion for a discovery conference under *Fed. R.Civ.P.* 26(f) to, *inter alia,* limit the scope of discovery, does not, in effect, grant to movant a protective order or an extension of time within which to answer interrogatories); syl. pt. 3, *State ex rel. Walker v. Giardina,* 170 W.Va. 483, 294 S.E.2d 900 (1982), quoting syl. pt. 2, *Hendershot v. Handlan,* 162 W.Va. 175, 248 S.E.2d 273 (1978) (" 'One may be charged with contempt for violating a court's order, of which he has actual knowledge, notwithstanding that at the time of the violation the order had not yet been formally drawn up.' ").[9]

### III. *The monetary sanctions*

Having found that the appellant was in contempt of court for disobeying willfully the orders compelling discovery entered on August 12, 1983 and December 12, 1983, the trial court, on March 6, 1984, entered an order, pursuant to its order of December 12, 1983, imposing monetary sanctions against the appellant in the amount of $7,400.00. The monetary sanctions were calculated at the rate of $100.00 per day for each of the 74 days in which the appellant was in contempt (commencing on the day after December 12, 1983 and ending on the date of the last hearing on the appellee's motions to dismiss or for other sanctions, that is, on February 24, 1984).

While the March 6, 1984 order stated that the monetary sanctions were to be paid to the Clerk of the Circuit Court of Kanawha County, West Virginia, the December 12, 1983 order stated that these monetary sanctions were to be paid to the appellee. Both of these orders refer to the appellant's willful disobedience of prior orders compelling discovery. Furthermore, the transcripts of the hearings on the appellee's motions for sanctions indicate that the predominant purpose of the monetary sanctions imposed by the trial court was to punish the appellant for his disrespect for the court's authority. On the face of the orders a collateral purpose apparently was to reimburse the appellee for an undetermined portion of his expenses in seeking sanctions for continuing violation of orders compelling discovery. On the other hand, the prospective, *per diem* method of computing the monetary sanctions indicates that one of the purposes of the trial court was to obtain for the appellee the matters sought by him to be discovered. In fact, both of these orders set new deadlines for discovery to be furnished.

The distinction between criminal and civil contempt and the type of sanction appropriate for each type of contempt is summarized in syllabus points 1 through 5 of *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981):

1. Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because

---

**9.** In addition to being factually unsupported, the appellant's argument that he had filed a "blanket" Rule 26(c)(4) motion to limit the scope of all future discovery to, in essence, relevant matters would not, even if factually accurate, afford a justification for noncompliance with subsequent orders compelling discovery. Such a motion to obtain general, prospective protection would be clearly superfluous for two reasons: (1) Rule 26(b)(1) limits discovery to relevant matters anyway and (2) even if an order pursuant thereto had been entered, the person in whose favor the order had been entered would still have to file later Rule 26(c)(4) motions in response to later discovery requests, setting forth specifically the good cause for each protective order, that is, why that particular discovery request asks for irrelevant matter or matter which, in the language of Rule 26(c), would cause "annoyance, embarrassment, oppression, or undue burden or expense[.]"

The rule [Rule 26(c) ] requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefor. The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause. 8 C. Wright and A. Miller, *Federal Practice And Procedure: Civil* § 2035 at 264–65 (1970) (footnotes omitted). Any claim of irrelevancy should be raised by objection to specific questions when asked. A court will not, in advance, pass upon anticipated questions. *Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266, 279 (S.D.N.Y.1958), *disapproved on other grounds, Black Panther Party v. Smith,* 661 F.2d 1243, 1265 & n. 141 (D.C.Cir.1981), *vacated on other grounds sub nom., Moore v. Black Panther Party,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982).

such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate.

2. Where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil.

3. The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order.

4. Where the purpose to be served by imposing a sanction for contempt is to punish the contemner for an affront to the dignity or authority of the court, or to preserve or restore order in the court or respect for the court, the contempt is criminal.

5. The appropriate sanction in a criminal contempt case is an order sentencing the contemner to a definite term of imprisonment or an order requiring the contemner to pay a fine in a determined amount.

*Robinson, supra,* also observes: "That an act is punished as neither wholly civil nor altogether criminal reflects an impermissible confusion or combination of purpose on the part of the sanctioning court." 166 W.Va. at 671, 276 S.E.2d at 818.

In the case presently before this Court the sanctions were imposed, apparently, to punish "the contemner [the appellant] for an affront to the dignity or authority of the court," and, at the same time, were imposed, apparently, to "compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing ... the right of that party under the order[.]" Consequently, there was "an impermissible confusion or combination of purpose on the part of the sanctioning court" in treating the noncompliance with discovery orders as partially criminal contempt and partially civil contempt.

■ Moreover, the type of sanction imposed, that is, a prospective, *per diem* fine, was inappropriate for either type of contempt. The fines imposed were not "in a determined amount," as required for a criminal contempt; they were not "in the nature of compensation or damages to the party aggrieved," as required for a civil contempt.

Two recent cases decided by this Court on prospective fines for contempt of court note the invalidity of this type of monetary sanction. In syllabus point 4 of *Gant v. Gant,* 174 W.Va. 740, 329 S.E.2d 106 (1985), we held: "A circuit court does not have authority to place a one-percent-per-day penalty, payable to the injured party, for unpaid, *pendente lite* support." Instead, the circuit court should incarcerate the contemner indefinitely until he purges himself of the civil contempt by paying the accrued support arrearages. 174 W.Va. at 751, 329 S.E.2d at 117.

In syllabus point 5 of *State ex rel. UMWA International Union v. Maynard,* W.Va., 342 S.E.2d 96 (1985), this Court held: "A circuit court has no authority to impose a prospective penalty in an indirect criminal contempt proceeding whereby a specific fine was imposed payable to the State for [each] subsequent violation of the court's order." The principal defect with such a prospective fine is the rigid and arbitrary character of the amount selected, which is fixed in advance of hearing any evidence on the character or severity of the violations occurring subsequent to the circumstances which brought the original fine into being. 342 S.E.2d at 102.[10]

---

10. Justices Neely and Brotherton dissented in

the case of *State ex rel. UMWA International*

The prospective fines in *Gant* were payable to the injured party, while the prospective fines in *UMWA* were payable to the State. Here, the prospective fines, according to the order entered on December 12, 1983, were payable to the appellee as the injured party. On the other hand, they were to be paid to the Clerk of the Circuit Court of Kanawha County, West Virginia, according to the order entered on March 6, 1984. This inconsistency further obscures the trial court's purpose in imposing the fines. In any event, *Gant* or *UMWA* invalidates these fines.[11]

In syllabus point 1 of *Bell v. Inland Mutual Insurance Co.*, 175 W.Va. 165, 332 S.E.2d 127 (1985), this Court held:

> The imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Not having any authority to impose the prospective, *per diem* fines, the trial court clearly abused or exceeded its discretion as a matter of law in this case.[12]

### IV. *Conclusion*

Upon all of the above, we affirm the finding of contempt but reverse the imposition of the particular monetary sanctions and remand this case for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded.

---

*Union v. Maynard.* Because the majority held otherwise, they accede to that decision in the case now before the Court.

11. *UMWA* and the cases cited therein also reiterate the necessity of affording any contemner the various procedural safeguards outlined therein, due to the criminal nature of the offense. We need not repeat those procedural safeguards here.

12. Prior to any ruling by the trial court on the same, we do not reach the question of the propriety of the appellee's alternative motion, under *W.Va.R.Civ.P.* 37(b)(2)(C) and *Bell, supra*, to dismiss the appellant's action with prejudice, for his failure to comply with court orders compelling discovery to be provided or permitted.